Ben. J. Horton et al., Administrators, etc., *v.* George Carlisle et al.

(No. 8,510.)

1. Material furnished to a contractor by a third party, is not within the mechanics' lien law, unless furnished under an agreement that it is to be used in the construction of the particular building.
2. Where iron is furnished by A. to B., who manufactures the same into stair cases, railings, etc. which he applies to the construction of a building for C. it can not be maintained that A. has any claim under the mechanics' lien law; he must look to his vendee for pay.

Special Term.—The plaintiffs, as administrators of Nicholas T. Horton, deceased, seek to recover from defendants a balance alleged to be due for work done upon a block of buildings in Cincinnati. It consisted of iron stairways, and railing and grates, constructed of iron. The balance admitted by the parties was $326 07. There was no dispute between the original parties, as to the justice of the claim; but it was charged by Louis Worthington & Co., who were made defendants, and filed their answer and cross-petition, that the amount due by Carlisle should in equity be paid to them.

*B. J. Horton,* for plaintiffs.

*Abram Brower,* for defendants, Worthington & Co.

Storer, J.  The evidence in the case shows that Horton, a few months before his death, purchased from time to time,

the material from which the work done for Carlisle was constructed; and as it is testified by Worthington, the sale was made with the understanding between him and Horton, that the material would be used upon Carlisle's buildings.

Horton died in July, 1857. In August, Worthington & Co. filed their attested account with Carlisle, alleging that the iron they had sold to Horton, had not been paid for, and that they would require him, Carlisle, to discharge it from any moneys due to Horton for the work done. At this time Carlisle had paid every dollar to Horton or his administrators, that was due. Subsequently the administrators finished the job and claimed the balance now admitted by Carlisle to be due, and the question made to us, is, who is legally entitled to receive it?

In the view we take of the controversy, it would have been immaterial, we think, whether the work had been wholly done by Horton, or a part by him and the residue by his administrators. It was all done under the same contract, and must depend upon the same liabilities that attach to the original parties. The action is brought by the plaintiffs, in their representative capacity, not as individuals, and the inference must be, they carried on the work, after the death of their intestate, with his funds, for if they used their own, they must assume the character of individuals, not that of administrators. If, therefore, the alleged right of Worthington & Co. exists under the statute, it must apply to the entire period, between the commencement and finishing of the particular work done, and it is no matter whether the contractor performed but a part of it, in his life time, leaving the residue to be completed by his representatives.

But we do not think any such right as that claimed by Worthington & Co. exists.

By the second section of the act creating a lien in favor of mechanics and others, in certain cases, Swan, 551, "any person who shall furnish materials for the construction of such building, whose demand has not been paid, may deliver to the owner of such building, an attested account of the

amount and value of the materials thus furnished, and remaining unpaid, and thereupon such owner shall retain out of his subsequent payments to the contractor, the amount of such work and labor, for the benefit of the person so performing the same."

The object of the statute was, it is obvious, to place the middle man, who performed labor, or furnished materials, so far as the price to be paid by the owner of the building to the contractor is concerned, upon the same ground as if he was an original party. This, we are satisfied, is the true principle on which the right rests, and by which it is to be regulated.

It must be, then, labor bestowed upon the building, and material furnished and used in its construction.

The mechanic who labors in his shop to prepare portions of the work, if he does not fit it up, and adapt it to the building, can not be said to have a lien, either upon the structure itself, or the sum due to the contractor for its erection. Nor can the material man, for a similar reason, claim to be secured, when he has furnished only that, which becomes by translation, a portion of the building. We can readily perceive how the bricklayer and the lumber merchant, or the stone quarrier, may be said to be within the meaning as well as the spirit of the statute, for the materials they have furnished are indispensable to the erection of the building; without them, it could not have been completed. But there must be a limit to the right conferred, or it will become so complicated, that it can not be enforced; indeed, such a condition of things may thereby occur, that we ought to deny the remedy to prevent direct injustice.

The contractor who agrees to paint a building, may purchase the constituent parts of the materials he uses, of different persons: one may have furnished the oil, the other the pigment, but when all are combined, there certainly ought not to be a lien in behalf of each vendor. The brickmaker may have been supplied with the clay, from which he has manufactured his brick, by one party, and another have

furnished the fuel to burn the kiln, but it can not be said a right exists for both to be enforced under the statute.

And so with the iron-monger; he may sell the raw material to the founder and the machinist, but when it is worked up, whether it is changed from pig-iron into the bloom, or from the bloom into the bar, or from the bar into the steam-engine or the sugar-mill, the right to follow it through all these changes ought not to be permitted, else no vendee would ever acquire title to the manufactured article.

We may follow out the principle until we have applied it to every department of business, where mechanical ingenuity or power are required, whether in the construction of a ship, a boat, or a manufactory, a warehouse or dwelling-house; all may differ in the material required for their erection, but we shall find that all present just such a question as we are now called upon to decide. Some of the material used, or the adjustments demanded, are made up of a variety of elements, depending upon their ultimate application to the skill and labor of many intermediate agents; and as we can not extend the benefit of the statute to each, without defeating its real object, we must therefore confine the remedy within reasonable, as well as practicable limits.

In the case before us, it is evident the iron sold to the contractor Horton, was not delivered on the credit of Carlisle or on the faith that it would in some form or other be placed in his building. The vendee was under no obligation thus to use it. He might have appropriated it for any other purpose demanded by his business; and it can not be said if he had manufactured it into grates, or railing, or any commodity in his line of business, and sold the same, a lien would accompany each article; such a proposition could not be maintained, and we think the rule is equally applicable to the claim of Worthington & Co. The contract of Horton with Carlisle, was to furnish an article already finished, it was equivalent to a sale of the thing, if it already existed ready for delivery in the workshop; and there could be no right pertaining to the creditor of Horton, to follow the

Ben. J. Horton et al., Administrators, etc. v. George Carlisle et al.

subject into the hands of Carlisle. This ruling, we think, is fully sustained by the reason of the case and is in conformity with the opinion of our supreme court in *Choteau et al.* v. *Thompson et al.*, 2 Ohio St. 125, which decides that unless there is an agreement, express or implied, that the material shall be applied to the building, there is no lien; the seller trusts to the responsibility of the buyer alone, and takes no security; he sells not for the special purpose named in the statute, but for any purpose that may seem proper to the buyer. This construction is given by the courts in Pennsylvania, where a similar statute to ours exists; in 6 Harris, 52, *White* v. *Miller*, it was held, " the lumber must be delivered on the credit of the building for which it was purchased."

On the whole case we decide:

*First.* That we are not satisfied how much of the iron, furnished to Horton, became a part of the building owned by Carlisle; and if the statute gave a lien, we could not find how far it should extend or be enforced.

*Second.* That the iron was not sold to Horton under any agreement that it should be appropriated to any particular purpose, and there was no intention on the part of Worthington & Co. to look to the owner of the building for its ultimate payment, when they sold the iron to Horton. He had the right, we are satisfied, to do with it as he pleased, and it was sold on his credit solely.

*Third.* We are clearly of the opinion, that no right accrued to Worthington & Co. under the statute, as such a claim, as they now assert, is not within its letter or spirit and could not have been contemplated by the legislature when the law was passed.

Judgment for plaintiffs.